**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WAYNE A. WHEATLEY : | |
| 7440 Timothy's Way : | |
| Easton, MD 21601 : | |
| : | |
| Plaintiff : | Civil Action No: |
| : | |
| vs. : | |
| : | |
| I.G. BURTON & COMPANY, INC. : | |
| 793 Bay Road : | |
| Milford, DE 19963 : | |
| : | |
| Defendant : | |

**CIVIL ACTION COMPLAINT**

**JURISDICTION**

1. This action is brought to redress the deprivation of Plaintiff's rights and the termination of Plaintiff's employment by reason of the unlawful discrimination on the part of Defendant by reason of Plaintiff's age.

2. A Charge of Discrimination was timely filed with the Delaware Department of Labor and with the United Stated Equal Employment Opportunity Commission on November 6, 2003.

3. More than the required statutory period has elapsed for investigation by the said administrative agencies since the filing of the Charge of Discrimination and proceedings were terminated December 16, 2004 and January 27, 2005, respectively.

**PARTIES**

4. Plaintiff, Wayne A. Wheatley, is an adult citizen of the white race who presently resides at 7440 Timothy's Way, Easton, MD 21601. Plaintiff is 66 years of age having been born May 15, 1938.

5. The Defendant is I.G. Burton & Company, Inc., a corporation doing business at 793 Bay Road, Milford, DE 19963 and at 505 Bay Road, Milford, DE 19963.

6. At all material times Defendant was and is engaged in the sale of luxury automobiles, trucks, buses and other vehicles in the eastern United States and is engaged in interstate commerce.

7. Plaintiff is and was an exemplary employee, having first been employed by Defendant in or about November 1996.

8. Plaintiff has more than thirty years of experience as a salesman of Mercedes Benz and other luxury automobiles. By reason of Plaintiff's professionalism and competence, over the years, his many affluent customers came to I. G. Burton, Inc., and specifically requested Plaintiff to handle their subsequent purchases of new luxury automobiles or their leasings. Plaintiff brought many new customers to I.G. Burton, Inc., who would not otherwise have made purchases there.

9. Plaintiff has received many commendations from customers and has won numerous awards for excellent sales performance including designation as a Life Member of the Mercedes Benz Star Sales Guild. Plaintiff has consistently achieved customer satisfaction ratings among the highest in his sales group. In the last two full years Plaintiff was working in Defendant's showroom, 2001 and 2002, Plaintiff was the highest performing salesman in Defendant's BMW sales group.

**SPECIFIC ALLEGATIONS**

10. Beginning in or about December 2002, Defendant embarked on a program to recruit and to put in place younger salespersons for its BMW showroom and embarked on a plan, plot and scheme to unlawfully terminate Plaintiff's employment by reason of Plaintiff's age.

11. At a gathering of Defendant's employees in December 2002, Defendant hired an instructor, Joe Verde, who made a presentation to teach the employees new sales techniques to be implemented by Defendant. In the presence of all attendees and in keeping with the Defendant's purpose of discriminating against Plaintiff by reason of Plaintiff's age, Verde stated, "You older guys {*indicating the Plaintiff*} are going to have a hard time changing."

12. In early 2003, Defendant distributed a booklet issued by the BMW Corporation which emphasized the value and importance of having *young*, well trained employees.

13. In early 2003, Plaintiff's supervisor, Pete Renzi, approached Plaintiff and told Plaintiff that because Plaintiff had so many loyal customers who repeatedly purchased luxury automobiles through Plaintiff, that Plaintiff could probably sell cars from home. In doing so, Renzi explained, Plaintiff could avoid working in the BMW showroom and could develop more business on Maryland's Eastern Shore where Plaintiff resides.

14. In or about late February 2003, Pete Renzi, a Manager for Defendant, again suggested that Plaintiff should work from home and avoid working in the BMW showroom. On the next day, Plaintiff conceded and told Renzi that if details could be arranged to make it worthwhile, then Plaintiff would agree to work from home.

15. The Defendant, through its managers, supervisors and officers, engaged in unlawful acts and embarked on an unlawful campaign, motivated by discriminatory animus, specifically calculated to harass, annoy and cause such a hostile environment with respect to Plaintiff because of his age, as to render his working conditions intolerable, unreasonably burdensome and oppressive and to constructively discharge him from his

employment. Among the unlawful acts by Defendant in furtherance thereof include, but are not limited to, the following:

(a) On or about May 30, 2003, the last Friday of the month, Paul Caras, Sales Manager for Defendant, approached Plaintiff's desk and— without any previous discussion whatsoever between Plaintiff and Defendant about the prospect of Plaintiff working from home— told Plaintiff that a new salesperson had been hired and was to begin work in the showroom on the following Monday and that "it would not be fair" to the new salesperson if Plaintiff was still working there.

(b) On the very same day, on or about May 30, 2003, in a meeting with managers, Paul Caras, Pete Renzi and Pete Palmer, pressured and forced Plaintiff to cease working in the showroom and to relinquish his desk and work station so a new, younger employee, under age 30, could replace Plaintiff as Salesperson.

(c) On or about May 30, 2003, the Defendant acted by compelling Plaintiff to work from home, thereby preventing Plaintiff from sales opportunities that result from "walk-in" customers.

(d) As of early June 2003 discontinuing all sales support needed to be effective as a salesman working from home and not in the showroom, to wit:

[1] disconnecting Plaintiff's voice mail so that Plaintiff's customers would be unable to reach him;

[2] stopping all print advertisement containing Plaintiff's name or telephone number in the area of Maryland's Eastern Shore where Plaintiff resided;

[3] refusing to subsidize telephone service for Plaintiff to communicate with customers;

[4] refusing to provide Plaintiff with any demonstration models for sales promotion;

[5] advising Plaintiff's former customers that Plaintiff no longer worked for Defendant company;

4

[6] refusing to pay Plaintiff commissions on cars that Plaintiff had sold.

(e) Hiring a new employee, under 30 years of age, in or about June 2003, to replace Plaintiff.

(f) On or about June 2003, barring Plaintiff from working any weekdays in the showroom and permitting Plaintiff to work Saturdays only, a day that is undesirable for sales opportunity or success during summer months.

(g) In or about April, 2003, proposing that Plaintiff accept a sales compensation arrangement whereby Plaintiff would receive a 10% commission on Mercedes Benz sales and a 15% commission on BMW sales, at a time when all other salespersons were receiving 18% commissions on both Mercedes Benz and on BMW sales.

(h) Misdirecting Plaintiff's former customers who specifically request Plaintiff's service, to younger salespersons, thereby preventing Plaintiff from receiving the resultant commissions and reducing the sales performance of Plaintiff.

(i) Failing and refusing to assign any useful "bones" to Plaintiff. "Bones" is a term used in the automobile sales industry to describe the practice whereby managers direct potential clients to a designated salesman. Only a single "Bone" was ever assigned to Plaintiff and that "bone" involved a customer whose wife had already been personally offended by Plaintiff's manager, Paul Caras. Plaintiff completed the sale but lost a $700 bonus by reason of a negative customer satisfaction survey report.

(j) In or about April 2003, Paul Caras, shouted and yelled at Plaintiff in the presence of customers and other salespersons in a patently deliberate effort to embarrass Plaintiff and to make Plaintiff feel small.

(k) Requiring Plaintiff to retrieve a trade-in vehicle from one of Plaintiff's former customers (Flaherty) while directing the sales commission for the sale to a younger salesperson.

  (l) Causing a hard-to-sell $140,000 vehicle to be repossessed from a regular, repeat customer [Vasilikos] the day after Plaintiff had sold it, for the purpose and effect of preventing the Plaintiff from obtaining the sales commission for the sale and to preclude the accolades that would enure to Plaintiff for having made the sale.

16. Upon realizing that he had been duped and tricked by Defendant into working from home, Plaintiff requested on two separate occasions—June 10, 2003 and October 15, 2003 when salesperson vacancies existed in the showroom— to resume working in the Defendant's showroom. Plaintiff was turned down by Paul Caras and was flatly told by Pete Palmer, "It's not in the cards".

17. In furtherance of Defendant's unlawful plan, plot and scheme against the Plaintiff and in retaliation and reprisal for Plaintiff's filing of an administrative Charge of Discrimination, Defendant, through its officers, agents, administrators and managers, as recently as November, 2004, intercepted a check with respect to Plaintiff's funds that were on deposit with NADART, an individual savings program in the automobile industry, and refuses to forward same to Plaintiff. The expected and intended unlawful effect of Defendant's conduct was and is to make Plaintiff's personal financial situation extremely difficult.

18. The predictable and intended effect of the unlawful conduct of Defendant referenced above was to make Plaintiff feel humiliated, embarrassed and demeaned.

19. Defendant's conduct as described herein is typical of the pattern and practice of Defendant's conduct toward employees who are similarly situated as Plaintiff.

20. The conduct by Defendant described herein was calculated to produce and did produce a hostile work environment of age discrimination and placed Plaintiff in an intolerable situation.

21. The conduct by Defendant as described herein was willful, wanton, intentional, malicious, reckless and outrageous in its persistence and extremeness, evidencing both a clear knowledge and understanding of the precise nature of the unlawful acts and of the

harm caused to Plaintiff by the unlawful behavior.

22. Defendant, having knowledge of the unlawful conduct toward the Plaintiff and having power and authority to prevent or stop the commission of the misconduct, neglected or wilfully refused to act in preventing or stopping the wrongs being done to Plaintiff.

23. The conduct of Defendant was without justification, provocation, palliation or excuse.

24. The foregoing allegations constitute unlawful age discrimination in violation of the laws of the United States.

25. The unlawful discriminatory practices are of a continuing nature in the effect upon the Plaintiff and have persisted to this very day.

26. By reason of the unlawful conduct of the Defendant as hereinabove set forth Plaintiff has suffered great economic loss and has suffered a reduced earning capacity.

27. By reason of the unlawful conduct of the Defendant, as hereinabove set forth, Plaintiff has suffered loss of past earnings.

WHEREFORE, Plaintiff requests judgement in his favor and against Defendant and prays for an Order as follows:

[1] Declaring that I. G. Burton, Inc., unlawfully discriminated against Plaintiff in violation of the Age Discrimination in Employment Act and the Civil Rights Act of 1991;

[2] Directing Defendant to cease and desist from engaging in the aforesaid unlawful conduct;

[3] Directing the reinstatement of Plaintiff with all benefits and emollients of employment;

[4] Directing Defendant to implement steps and procedures to eliminate the unlawful hostile working environment;

[5] Awarding Plaintiff a specific sum to make Plaintiff whole with respect to back pay by reason of the conduct of Defendant up to the date of the Order;

[6] Awarding Plaintiff a specific sum to make the Plaintiff whole for front-pay and

        emoluments of employment;

[7]    Awarding Plaintiff exemplary and punitive damages;

[8]    Awarding Plaintiff attorney fees and costs of this litigation, including the cost and fees with respect to proceedings before the Delaware Department of Labor, Division of Industrial Affairs;

[9]    Directing Defendant to forbear from any act or omission in retaliation or reprisal or retaliation against Plaintiff;

[10]    Retaining jurisdiction to assure compliance with the Order of Court;

[11]    Awarding Plaintiff such other forms of relief as are deemed just and proper.

`

/s/ Thomas S. Neuberger
THOMAS S. NEUBERGER, ESQUIRE
THE NEUBERGER FIRM
Del. Bar Number 243
Two East Seventh Street
Suite 302
Wilmington, DE 19801
    302-655-0582
    302-655-9329 [fax]
E-mail  TSN@neubergerlaw.com


/s/ Roland J. Atkins
ROLAND J. ATKINS, ESQUIRE
ATKINS & COHEN, P.C.
PA Supreme Court I.D. Number 21318
1430 Land Title Building
100 South Broad Street
Philadelphia, PA 19110
    215-448-3900
    215-448-3905 [fax]
E-mail  rjatkins@atkins-cohen.com